IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Sonia Antoine, Individually and as Personal Representative on Behalf of the Estate of Lennox Wishart Hinckson, | C/A No. 5:20-cv-01156-CMC |
| Plaintiff, | |
| vs. | Opinion and Order<br>Granting Motion to Remand |
| Holcim (U.S.), Inc., Claudio Butkus, Sheetalnath Mahalungkar, Richard Simmons, and David Legette, | |
| Defendants. | |

Through this action, Sonia Antoine ("Plaintiff"), acting as personal representative of the estate of her father, Lennox Wishart Hinckson ("Hinckson"), seeks recovery for losses arising from an industrial accident. The accident occurred when Hinckson was performing maintenance on an elevator at a cement plant owned by Holcim (U.S.), Inc. ("Holcim"). Plaintiff names Holcim and the following Holcim employees as Defendants: Claudio Butkus, Sheetalnath Mahalungkar, Richard Simmons, and David Legette (collectively "Individual Defendants").

The matter is before the court on Plaintiff's motion to remand. For reasons explained below, the motion to remand is granted. Because the court grants the motion to remand, it does not reach Defendants' motion to dismiss which remains pending on remand.

**BACKGROUND**

**Complaint.** Plaintiff filed this action in state court on December 3, 2019. ECF No. 1-1 (Complaint). The Complaint alleges Hinckson was "an elevator technician" who "died while working as a third-party contractor at a cement plant owned, operated, and maintained by Defendants." *Id.* ¶ 4; *see also id.* ¶¶ 8, 11 (characterizing Hinckson as a "third party contractor[]").

It further alleges Hinckson was "an employee of Alimak Hek Elevator Company" ("Alimak") and "visited the premises of the Holcim Plaint to conduct routine elevator maintenance." *Id.* ¶ 15; *see also id.* ¶ 16 (alleging this maintenance was "requested by Holcim employees and/or managers as no miners or other employees of the Defendants were capable of performing the work if necessary."). According to the Complaint, the "sole business purpose and trade" of the Holcim facility where Hinckson died "is the surface mining of limestone and the production of cement." *Id.* ¶ 5; *see also id.* ¶ 6 (alleging "Holcim is the largest cement producer in the United States" and "derives substantial revenues from mining, producing, and selling cement and related products and materials").

**Removal.** Holcim, a citizen of Delaware and Illinois, removed the matter to federal court based on the assertion of diversity jurisdiction. ECF No. 1 at 1-3. The removal papers concede Plaintiff and the Individual Defendants are all citizens of South Carolina, but argue the Individual Defendants' citizenship should be disregarded because they were fraudulently joined. *Id.* ¶¶ 12-15. Given the nature of the action, Holcim asserts the amount-in-controversy requirement is satisfied, a point that is not in dispute.

The fraudulent joinder argument relies on the limited remedies and corresponding immunities available under South Carolina Workers' Compensation Act, S.C. Code Ann. § 42-1-30 *et seq.* ("the Act"). *Id.* ¶¶ 16-23. Specifically, Holcim argues: (1) the Act provides "the exclusive remedy in suits by employees against their employers for injuries . . . arising out of or in the course and scope of employment" (*id.* ¶ 17); (2) the Act applies to claims against "upstream business owner in certain circumstances" even though the injured party was "not directly employed" by the upstream business (*id.* ¶ 18); (3) those circumstances exist in this case because "Hinckson was a statutory employee of Holcim for purposes of workers' compensation because

2

his work at the plant in servicing the pre-heater tower elevator was an important, necessary, essential, and integral part of Holcim's operations" (*id.* ¶ 19); and (4) because the Act applies and bars pursuit of recovery from co-employees (absent circumstances not alleged here), as a matter of law, Plaintiff cannot pursue recovery from the Individual Defendants (*id.* ¶¶ 20-22).

**MSHA Report.** Holcim attached a Report of Investigation of Hinckson's fatal accident prepared by the United States Department of Labor Mine Safety and Health Administration ("MSHA Report") to the removal papers. ECF No. 1-2. The MSHA Report describes Hinkson as "a contract elevator technician, who had been servicing the plant's elevator for the past seven years." ECF No. 1-2 at 4. The overview section of the MSHA Report states "[t]he accident occurred because *Alimak Hek Elevator Company* did not have an effective procedure to block the elevator against motion while performing work." *Id.* (emphasis added). It addresses the relationship between Holcim and Alimak as follows:

> [Holcim] owns and operates Holly Hill Facility (Holly Hill), employs 160 miners and operates two twelve-hour shifts per day, seven days a week. bulldozers uncover limestone then front-end loaders load the limestone into haul trucks. The haul trucks deliver the product to a crusher and it is then transported by conveyor belt to the plant for processing into cement.
>
> * * *
>
> Holly Hill contracts [Alimak] to service and maintain the Alimak elevators.

ECF No. 1-2 at 5; *see also id.* at 9 (describing Hinckson as an "Elevator Technician" for Alimak and placing responsibility for the accident on Alimak as "contractor").

The MSHA Report states "Hinkson had 33 years of experience servicing and erecting Alimak elevators" and had received training from Alimak including "hazard training" that addressed "lockout-tag out requirement and pinch point hazards." *Id.* at 4. The MSHA Report found the root cause of the accident was "Alimak did not have an effective procedure to prevent

3

the elevator from moving while work was being done." Under "Corrective Action," the MSHA Report states "Alimak has installed lock boxes on the call buttons on each level of the plant" and "revised its training plan to require the locking of call buttons[."]

**Motions to Dismiss and Remand.** On April 8, 2020, the parties filed cross-motions to dismiss (ECF No. 4) and remand (ECF No. 7), raising related arguments. Both motions are fully briefed. *See* ECF Nos. 4, 7, 17, 18, 19. However, because the court grants Plaintiff's motion to remand, it does not reach Defendants' motion to dismiss.

Plaintiff advances two grounds for remand. First, she argues "the common defense or common defect exception precludes application of the fraudulent joinder doctrine" under the facts of this case. ECF No. 7 at 1; ECF No. 7-1 at 7-8 (argument on common defense exception to fraudulent joinder). Second, she argues Holcim cannot satisfy the high standard required to show fraudulent joinder: that Plaintiff has "*no possibility* . . . of avoiding the exclusivity defense asserted by Defendants." ECF No. 7 at 1 (emphasis in original); ECF No. 7-1 at 8-12.

In opposition, Holcim argues the common defense exception to the fraudulent joinder doctrine has not been adopted by the Fourth Circuit and is, in any event, inapplicable because of differences between the defenses advanced by Holcim (exclusivity of the Act's remedies) and the Individual Defendants (co-employee immunity under the Act). ECF No. 18 at 7-13. Turning to fraudulent joinder, Holcim argues the Individual Defendants are immune from suit as Hinckson's co-employees because Holcim was Hinckson's statutory employer. Holcim argues the court must find it was Hinckson's statutory employer because the elevator was essential to Holcim's operations. *Id.* at 13-19; *see also id.* at 19-33 (summarizing case law and arguing a recent decision of the South Carolina Court of Appeals on which Plaintiff relies was wrongly decided).

4

Asserting the court may consider materials beyond the pleadings, Holcim attaches and relies on both the MSHA Report (ECF No. 18-2) and a declaration of one of the Individual Defendants, Sheetalnath Mahalungkar (ECF No. 18-1).[1]  The declaration addresses the necessity for a properly functioning elevator (referred to as a "shaft-less industrial hoist"), concluding as follows:

> [I]t is essential for Holcim's business and its operations to ensure that the shaft-less industrial hoist at issue is in working condition and that it meets state and federal guidelines.  Accordingly hoist maintenance, including everything from emergency repairs to preventative service, is a necessary, essential, and integral part of Holcim's operations.

ECF No. 18-2 ¶¶ 5-8.  The declaration further explains:

> 10.    While Holcim employs its own technicians to perform other necessary inspections and monitoring, maintenance, and operational tasks on the preheater tower, Holcim has found it efficient to contract out to Alimak the repairs and maintenance of the shaft-less industrial hoist at issue, as well as the repairs and maintenance of other lifts at the plant.  As a result, Alimak's technicians routinely work at the plant.  In the past two years, for instance, Alimak technicians have been at the plant at least 69 times.  While there, the Alimak technicians are provided with company-issued radios to report to the plant's maintenance contact and to communicate with the control room.  Lennox Hinckson was one of two primary Alimak technicians frequently on site.  Upon information and belief, Mr. Hinckson had performed service and maintenance on the shaft-less industrial hoist at issue since 2003 and, in fact, worked on the installation of it in 2002.

*Id.* ¶ 10; *see also id.* ¶ 11 (stating belief "Hinckson also was an employee of Alimak" and had been at the Holly Hill plant the week prior to the accident to perform preventative maintenance).

---

[1]  The MSHA Report was also attached to the removal papers and is summarized above.

## FRAUDULENT JOINDER STANDARD[2]

A district court may disregard a nondiverse party and retain jurisdiction if the nondiverse party was fraudulently joined. *See Mayes v. Rapaport*, 198 F.3d 457, 461 (4th Cir. 1999). To show fraudulent joinder, the removing party "must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

"The party alleging fraudulent joinder bears a heavy burden–it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424. The Fourth Circuit has described this standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id*. (citations omitted). All the plaintiff needs to show is that there is a "glimmer of hope," *Mayes*, 198 F.3d at 466, or a "slight possibility of a right to relief" in state court. *Hartley*, 187 F.3d at 426.

## DISCUSSION

For reasons explained below, the court finds Holcim has not met its heavy burden of showing Plaintiff has no possibility of establishing a cause of action against the Individual Defendants. This is because whether Holcim was Hinckson's statutory employer raises debatable issues of fact and law, as to which the outcome is uncertain. It follows that Plaintiff has at least a glimmer of hope of surviving the anticipated defense of co-employee immunity. Because the court

---

[2] It is undisputed here that removal was proper only if the Individual Defendants were fraudulently joined.

finds the defense on which Holcim relies is not sufficiently clear to support fraudulent joinder, it need not decide whether the common defense exception prevents Holcim from arguing the Individual Defendants were fraudulently joined.

**Statutory Employment Standards.** Coverage under the Act based on statutory employment is established by Section 42-1-400 of the South Carolina Code, which provides as follows:

> When any person, in this section and [s]ections 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work *which is a part of his trade, business or occupation* and contracts with any other person (in this section and Sections 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this title [that] he would have been liable to pay if the workman had been immediately employed by him.

S.C. Code Ann. § 42-1-400 (emphasis added).

"The rationale [for covering statutory employers] is to prevent owners and contractors from subcontracting out their work to avoid liability for injuries incurred in the course of employment." *Glass v. Dow Chem. Co.*, 482 S.E.2d 49, 50 n.1 (S.C. 1997). Thus, the statutory employment provision was designed to protect employees, though, as here, the same standards apply whether raised as a sword to impose liability on an employer under the Act or a shield to protect the employer from liability for a tort claim. *See Olmstead v. Shakespeare*, 581 S.E.2d 483, 486 (S.C. 2003) (declining to adopt a "different standard of review for cases in which the workers' compensation statute is used as a shield to liability").

Looking to the specific activity performed by a putative statutory employee, South Carolina courts ask the following questions:

(1) is the activity an important part of the owner's business or trade;

> (2) is the activity a necessary, essential, and integral part of the owner's trade, business or occupation; *or*
> (3) has the identical activity previously been performed by the owner's employees?

*E.g., Abbott v. The Limited, Inc.*, 526 S.E.2d 513, 514 (S.C. 2000) (citing *Glass*, 482 S.E.2d at 51); *Edens v. Bellini*, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004). "Only one of these three tests need be met but there is no easily applied formula and each case must be decided on its own facts." *Abbott* at 514 (citing *Glass*). The ultimate "'guidepost'" is whether the activity being performed "'is or is not a part of the general trade, business, or occupation of the owner.'" *Id.* (quoting *Hopkins v. Darlington Veneer Co.,* 38 S.E.2d 4, 6 (S.C. 1946)).

Whether a worker directly employed by one entity is the statutory employee of another is a jurisdictional question resolved by the court based on the court's view of the preponderance of the evidence. *E.g.*, *Edens*, 597 S.E.2d at 866. It is, therefore, decided on motion to dismiss under Rule 12(b)(1) of the relevant court's rules. *Id.* at 866-67. Such a motion may consider evidence such as affidavits without converting the motion to a motion for summary judgment. *Id.* at 867 (noting court "has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence."). On appeal, "the appellate court can take its own view of the preponderance of the evidence." *Id.*; *see also Glass*, 482 S.E.2d at 51 ("determination of the employer-employee relationship for workers' compensation purposes is jurisdictional. Consequently, this Court has the power and duty to review the entire record and decide the jurisdictional facts in accord with the preponderance of the evidence.")

While some earlier decisions may suggest a broader reach, more recent decisions of the South Carolina courts consider not only whether an activity (or piece of equipment on which an activity is performed) is necessary or important to the putative statutory employer, but whether the activity itself is *an important part of the putative employer's business*. For example, in *Abbott*,

8

the South Carolina Supreme Court held that, even though it is "important to [a retailer] to *receive* goods[,]" this does not render the delivery of goods an important part of [the retailer's] business." *Abbott*, 526 S.E.2d at 514 (emphasis in original). The court concluded a transportation worker who was injured while delivering goods to a retailer was not the retailer's statutory employee. *Id.* ("We conclude the mere recipient of goods delivered by a common carrier is not the statutory employer of the common carrier's employees."). The court expressly overruled two prior decisions of the South Carolina Court of Appeals to the extent they "may be read to hold otherwise." *Id.* n.1.

The court reached a similar conclusion a month later in *Meyers v. Piggly Wiggly No. 24, Inc.*, 527 S.E.2d 761 (S.C. 2000), where it held a route salesman was not the statutory employee of the grocery store to which he delivered goods even though the salesman stocked and maintained shelves within the grocery store. *Meyers*, 527 S.E.2d at 763. The court explained, "although Meyer's stocking and cleaning of his display may have incidentally benefitted Piggly Wiggly, these activities related only to the sale of Vendor's goods and were insubstantial in the context of Piggly Wiggly's general business."

Three years later, in *Olmstead v. Shakespeare*, the South Carolina Supreme Court applied the rationale in *Abbott* to hold a transportation worker involved in picking up and delivering a manufacturer's finished product was not the manufacturer's statutory employee. The court rejected arguments attempting to distinguish *Abbott* on grounds "delivery of the [finished product] was essential to [the manufacturer's] business because the sale would be complete upon delivery." *Olmstead*, 581 S.E.2d at 485. The court explained "*Abbott* is not limited to receipt of goods cases, but applies equally to delivery of goods cases a*s long as the transportation of goods is not the*

9

*primary business of the company* to whom or from whom goods are being delivered." *Id.* (emphasis added).[3]

> The court addressed the need for case-specific analysis as follows:
>
> This Court has recognized that the construction of the statutory employment statute, and the tests established to interpret that statute, *do not eliminate the need for an individualized determination of the facts of each case* in which statutory employment is alleged. "Since no easily applied formula can be laid down for determining whether work in a particular case meets these tests, *each case must be decided on its own facts*."

*Id.* at 486 (quoting *Glass,* 482 S.E.2d at 51) (emphasis added).

Ultimately, *Olmstead* rejected the statutory employer argument, finding "Shakespeare designs and manufactures fiberglass products. It is not in the transportation business; it did not own any delivery trucks and none of its employees participated in delivery of its products beyond the loading stage." *Id.* The court acknowledged the shift in jurisprudence resulting from its recent decisions, explaining "*Abbott* represents *a change in this state's jurisprudence on what activity constitutes 'part of [the owner's] trade, business or occupation'* under section 42-1-400, and likely conflicts with cases other than the ones we explicitly overruled in footnote 1 of the *Abbott* opinion." *Id.* (emphasis added). Based on this change, the court expressly "overrule[d] all prior cases to the extent they are in conflict with our holding in *Abbott* and now in this case." *Id.*[4]

---

[3] Notably, Shakespeare employees were involved in overseeing the loading, including directing the driver to remove several poles after they were loaded. It was this removal that led to the driver's injuries. Despite this interaction between Shakespeare's employees and the driver the court declined to find statutory employment.

[4] While *Abbott* and *Olmstead* change the jurisprudence on what satisfies the statutory requirement an activity be part of the owner's trade, business or occupation, earlier decisions have not entirely ignored the requirement the activity at issue not only be *important* to the putative statutory employer, but also fall within that entity's normal trade or business. *See Glass*, 482 S.E.2d at 51 (holding defendant was not workers' statutory employer because preponderance of the evidence

The South Carolina Court of Appeals decided *Edens v. Bellini* the following year. While the statutory employment determination was not challenged on appeal, the Court of Appeals noted the trial court correctly determined a maintenance worker was a manufacturer's statutory employee where the worker was employed to assist the manufacturer's own maintenance workers and was engaged in such activity when the fatal accident occurred. *Edens*, 597 S.E.2d at 869. The court explained: "[Decedent] was asked to assist, and was under the direction of [the manufacturer's] associates when he performed this work. [The manufacturer's] associates could have performed and were in fact also performing the work . . . and had done similar work . . . previously without the assistance of" the subcontractor's employees. *Id.*[5]

In 2019, the South Carolina Court of Appeals reached the opposite result, finding a contract maintenance worker was not a statutory employee of the entity that operated the manufacturing plant where he performed maintenance. *Keene v. CAN Holdings, LLC*, 827 S.E.2d 183 (S.C. Ct. App. 2019), *cert. granted* (Nov. 1, 2019). There, the putative statutory employer argued the "maintenance and repair work on plant equipment was a part of [its] business, which was manufacturing polyester fiber, because the plant would not have been able to properly function without the maintenance and repair work performed by [the worker]." *Id.* at 188. It further argued *Abbott* and *Olmstead* were not controlling as they addressed statutory employment in the transportation context.

---

indicated the work at issue, replacement of construction panels to settle claims against defendant relating to a different product, was not part of defendant's trade or business).

[5] While the court did not rely solely on the third test for statutory employment, these facts clearly satisfy that test. *See*, *e.g.*, *Abbott*, 526 S.E.2d at 514 (expressing third test as "has the identical activity previously been performed by the owner's employees?").

> The court declined to read *Abbott* and *Olmstead* so narrowly, explaining as follows:
>
> [T]he logic employed by the court in *Abbott* and *Olmstead* brought new clarity to the abundance of case law on this issue and this logic is binding in the present case. Accordingly, the circuit court correctly determined that even though the maintenance work [the plaintiff] performed was essential *for* Appellant's conduct of manufacturing polyester fiber, it does not mean that equipment maintenance was a *part or process* of Appellant's manufacturing business. In sum, the analysis in *Abbott* and *Olmstead* is true to the legislative intent underlying setion 42-1-400, which seeks to determine whether the type of work performed by the worker is the same type of work "the owner" has established as its business, and its logic applies across all trades, businesses, and occupations, allowing each case to be decided ion its own facts.

*Keene*, 827 S.E.2d at 190-91 (emphasis in original).

Ultimately, the court was persuaded the worker was not the defendant's statutory employee because "only [the contractor's] employees performed maintenance and repairs on the equipment in the [relevant] plant," "[n]one of [the defendant's] employees performed this type of work[.]" and an employee of defendant admitted the defendant used the contractor for maintenance work because it was "a qualified, capable contractor that can do the *expert* work" needed. *Id.* at 193 (emphasis in original, internal quotation marks omitted).[6]

**Standards Applied.** Whether this matter was properly removed to this court depends on whether the Individual Defendants were fraudulently joined. Whether they were fraudulently joined depends on whether Plaintiff has a "glimmer of hope" or "slight possibility" of succeeding on her claims against them in state court. *Mayes*, 198 F.3d at 466; *Hartley*, 187 F.3d at 426. This, in turn, depends on whether there a possibility the state court would find Holcim was NOT

---

[6] Holcim argues *Keene* is an outlier and notes it is currently under review by the South Carolina Supreme Court.

Hinckson's statutory employer and, consequently, deny the Individual Defendants' claim of co-employee immunity. For reasons explained below, the court finds such a possibility exists.

The first challenge for Holcim's fraudulent joinder argument is the fact-specific nature of the statutory employer determination. While the determination is made by the court, not a jury, it is made based on the court's view of the preponderance of the evidence based on consideration of the entire record. *See, e.g., Glass*, 482 S.E.2d at 51; *Edens*, 597 S.E.2d at 866. The trial court's view of the preponderance of the evidence is not binding on the Court of Appeals or Supreme Court. Thus, there are multiple points at which state trial judges might reach differing results in a close case.

The results in *Edens* and *Keene* demonstrate the potential for different results based on case-specific variations. While both cases addressed whether maintenance workers were statutory employees of businesses where they performed maintenance, they reached different results based on distinctions between the circumstances under which the work was performed. In *Edens,* the court found statutory employment where the contract worker did the same work as direct employees of the manufacturer and under those employees' supervision or direction. The contract worker also regularly performed his work at the statutory employer's manufacturing plant. In contrast, in *Keene*, the court found no statutory employment where the putative statutory employer had no direct employees that did the same work and admitted it contracted out the work due to the expertise required. *Keene*, 827 S.E.2d 193.

The facts in this case are more similar to those in *Keene* than *Edens*. Unlike in *Edens*, Holcim did not have employees who regularly did the type maintenance at issue (maintaining elevators) and the degree of assistance provided Hinckson by Holcim's employees was minimal

13

and non-technical.[7]  Further, although Hinckson did work at Holcim's plant over the course of many years, he was present, at most, once every week and a half.

Holcim's argument *Keene* is an outlier and might be reversed on certiorari does not warrant disregarding this decision.  Whether or not the case is ultimately upheld by the South Carolina Supreme Court, this court cannot say it is clearly wrong.  To the contrary, by focusing on whether the work at issue is "part or process" of the putative statutory employer's manufacturing business, *Keene* appears to give effect to the South Carolina Supreme Court's shift in jurisprudence in *Abbott* as expressly noted in *Olmstead*.  *See Olmstead*, 581 S.E.2d at 486 ("*Abbott* represents a change in this state's jurisprudence on what activity constitutes 'part of [the owner's] trade, business, or occupation' under section 42-1-200, and likely conflicts with cases other than the" two cases explicitly overruled in *Abbott*).  Thus, because fraudulent joinder requires Holcim to demonstrate Plaintiff has no possibility of success "after resolving all issues *of law* and fact in [her] favor[,]" the possibility the South Carolina Supreme Court might reverse or modify *Keene* is not enough to support fraudulent joinder.[8]  *See Hartley*, 187 F.3d at 424 (emphasis added).

In any event, this court finds *Abbott* and *Olmstead* may reasonably be read to disfavor a finding of statutory employment in this case.  This is because both cases focus not on whether a particular activity (there transportation) is necessary or important to the putative statutory

---

[7] Holcim points only to evidence it provided a radio for communication and its employees performed simple tasks such as stopping individuals from using the elevator or holding a tool in a particular position *at Hinckson's instruction*.  In contrast, in *Edens* the contract worker performed his tasks "under the direction of [the manufacturer's] associates." *Edens*, 597 S.E.2d at 869.

[8] The court declines Holcim's suggestion it stay this action pending the decision in *Keene*.  For reasons explained above, rather than favoring a stay, uncertainty of the law favors remand.

employer but whether the activity is an "important part of [the putative statutory employer's] business." *Abbott*, 526 S.E.2d at 514 (noting ultimate guidepost is whether the activity "is or is not a part of the general trade, bsiness, or occupation of the owner." (internal marks omitted)); *see also Olmstead*, 581 S.E.2d at 485 (holding rule in *Abbott* "applies equally" to delivery or receipt of goods where the transportation at issue "is not the primary business of the company").

The logic of these cases may reasonably be applied to activities of a business other than transportation, including maintenance of equipment or structures that may, themselves, be necessary to business operations. Nothing in *Abbott* or *Olmstead* suggests a narrower intent. For example, while having a roof, walls and windows may be essential to many businesses, it does not follow that maintenance work on these structures is necessarily "part of [the] trade, business or occupation" of those businesses. Extending the logic of *Abbott* and *Olmstead* to activities other than transportation, as the court did in *Keene*, provides a logical basis for distinguishing between maintenance work on structures such as these (roofs, walls and windows) and work that is truly part of the putative statutory employer's business. The present case presents a circumstance where the line might reasonably be drawn in Plaintiff's favor because, while the elevator itself may be "important, necessary, essential and integral" to Holcim's business operations (*see* ECF No. 19 at 5), it is far less clear that the a*ctivity of maintaining the elevator* is, itself a part of Holcim's business.

Thus, with or without consideration of *Keene*, the court finds it at least debatable whether a South Carolina court would hold Holcim was Hinckson's statutory employer. Because the outcome is debatable, Holcim has not met the heavy burden of establishing the Individual Defendants were fraudulently joined, a determination necessary to support removal.

## CONCLUSION

For the reasons set forth above, the court grants Plaintiff's motion to remand and remands this matter to the state court from which it was removed.[9] The court declines to award costs or fees.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
May 7, 2020

---

[9] The undersigned does not reach the motion to dismiss, which has been fully briefed and remains for resolution by the state court.